UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EVAN NIX,

                              Plaintiff,

                                                        9:16-cv-00828
v.                                                      (FJS/TWD)

LESTER, et al.,

                              Defendants.

_____

APPEARANCES:                                OF COUNSEL:

LAW OFFICES OF DEVON M. WILT                DEVON M. WILT, ESQ.
Counsel for Plaintiff
160 Broadway, 4th Floor
New York, NY 10038

HON. ERIC T. SCHNEIDERMAN                   NICOLE E. HAIMSON, ESQ.
Attorney General of the State of New York   Assistant Attorney General
Counsel for Defendants
The Capitol
Albany, NY 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>REPORT and RECOMMENDATION</u>

        This prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been

referred to this Court for Report and Recommendation by the Hon. Frederick J. Scullin, Jr.,

Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

The matter is now before the Court on the partial motion to dismiss for failure to state a claim

pursuant to Federal Rule of Civil Procedure 12(b)(6) filed on behalf of Corrections Officer

("C.O.") Victor Norton and C.O. Stephen Lester.  (Dkt. No. 32.)  For the reasons that follow, the

Court recommends granting Defendants' motion.

# I.      PROCEDURAL HISTORY

On July 7, 2016, Plaintiff Evan Nix, a former inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this action by paying the fee to file the original complaint.  (Dkt. No. 1.)  After motion practice, the parties stipulated to discontinue all causes of action against the State of New York and DOCCS. (Dkt. Nos. 11, 22 and 25; *see also* Text Entry 1/10/2017.)  Plaintiff's second amended complaint, the operative pleading, was accepted for filing on January 18, 2017.  (Dkt. Nos. 23 and 26.) Defendants are C.O. Norton, C.O. Lester, C.O. John Doe 1, 3, 4, and 8, "Nurse Aide Edie R.," and Nurse Jane Doe 2 and 6.  (Dkt. No. 23 at ¶¶ 1, 7, 8.[1])

Generally, Plaintiff claims that on July 7, 2013, while housed at Washington Correctional Facility ("WCF"), he was attacked by another inmate, subjected to excessive force by either C.O. Norton or C.O. Lester while the other failed to intervene, verbally harassed and threatened by C.O. Norton and C.O. Lester, and denied immediate and adequate medical care in violation of the Eighth Amendment.  *Id*. at ¶¶ 24-47.  Over the course of the next several days, Plaintiff alleges that he was denied medical care, subjected to inhumane conditions of confinement, and deprived of religious materials.  *Id*. at ¶¶ 48-72.  Plaintiff also alleges all Defendants "covered-up the actions of each other in the use of excessive force and failure to provide medical treatment." *Id*. at ¶ 83(c).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), C.O. Norton and C.O. Lester now move to dismiss the following claims: (1) failure to safeguard Plaintiff from being assaulted by

---

[1]  To date, only C.O. Norton and C.O. Lester have been served with the second amended complaint.

another inmate; (2) verbal assault and harassment; and (3) deliberate indifference to Plaintiff's medical needs. (Dkt. No. 32-1.[2]) At this time, C.O. Norton and C.O. Lester move to dismiss the Eighth Amendment excessive force and failure to intervene claim against them regarding their alleged assault of Plaintiff and the failure to protect Plaintiff from that assault. *Id.* at 3 n.1.[3] Plaintiff opposes Defendants' motion. (Dkt. No. 40.) For the reasons set forth below, the Court recommends that Defendants' partial motion to dismiss be granted.

## II. BACKGROUND

The following relevant facts are derived from the face of Plaintiff's second amended complaint and are accepted as true for the purposes of deciding the pending motion. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### A. July 7, 2013

On July 7, 2013, at approximately 8:30 p.m., while playing basketball at WCF, Plaintiff was attacked by another inmate. (Dkt. No. 23 at ¶ 25.) Specifically, inmate Reggie Sanders struck Plaintiff twice in the back of his head and then grabbed Plaintiff into a "bear hug." *Id.* at ¶¶ 25-27. Plaintiff was "unable to get away" from inmate Sanders. *Id.* at ¶ 28. C.O. John Doe 1 ("JD1") approached the two inmates and ordered them to stop fighting. *Id.* at ¶ 29. Inmate Sanders "released Plaintiff from the bear hug." *Id.* at ¶ 30.

C.O. Norton and C.O. Lester approached Plaintiff and inmate Sanders. *Id.* at ¶ 31. Either

---

[2] Although Defendants' notice of motion refers to Federal Rule of Civil Procedure Rule 56, it is evident that Defendants seek partial dismissal of the second amended complaint pursuant to Rule 12(b)(6). (Dkt. Nos. 32 and 32-1.)

[3] Page references to documents identified by docket number are to the page assigned by the Court's electronic filing system.

C.O. Norton or C.O. Lester grabbed Plaintiff's left arm and kicked Plaintiff's left knee. *Id*. at ¶ 32. Plaintiff "heard a 'pop' sound come from his left knee and he fell to the ground." *Id*. at ¶ 33. That same Defendant "then got on top of Plaintiff and placed his knee into the back of Plaintiff's neck pushing Plaintiff's face hard into the ground causing Plaintiff to split his lip and chip both of his two (2) top front teeth on the cement." *Id*. at ¶ 34. The other Defendant, either C.O. Norton or C.O. Lester, failed to intervene during this use of force. *Id*. at ¶ 92.

Plaintiff's hands were restrained. *Id*. at ¶ 36. Plaintiff told C.O. Norton and C.O. Lester that he could not walk. *Id*. Either C.O. Norton or C.O. Lester told Plaintiff to "[s]hut the fuck up before we break the other leg, you shouldn't have been fighting." *Id*. at ¶ 37. Plaintiff responded "I wasn't fighting." *Id*. at ¶ 38. C.O. Norton and C.O. Lester "dragged Plaintiff to a Response Team Van Unit #29 and threw him into the van." *Id*. at ¶ 39.

"Plaintiff was transported to the Medical/Health Services Facility of WCF by Defendants C.O. Norton and C.O. Lester." *Id*. at ¶ 40. Plaintiff told C.O. Norton and C.O. Lester "that he was unable to walk and could not exit the van." *Id*. at ¶ 41. Either C.O. Norton or C.O. Lester told Plaintiff, "[i]f you don't stop crying, we will really kick your ass." *Id*. at ¶ 42. C.O. Norton and C.O. Lester grabbed Plaintiff by his handcuffs and dragged him out of the van. *Id*. at ¶ 43.

Plaintiff was examined by Nurse Jane Doe 2 ("JD2"). *Id*. at ¶ 44. Plaintiff told Nurse JD2 that he "was unable to walk without extreme pain." *Id*. at ¶ 45. "Nurse JD2 provided Plaintiff with band-aids and sent him back to his Housing Dorm." *Id*. at ¶ 46. "Plaintiff was placed in Keep Lock which is isolation and given a Tier II ticket for fighting." *Id*. at ¶ 47.

**B.     July 8, 2013, and July 9, 2013**

In the morning hours of July 8, 2013, Plaintiff informed C.O. John Doe 3 ("JD3") that he had "extreme pain in his left knee when he put pressure on his left leg and when walking and

needed immediate medical attention." *Id*. at ¶ 48. C.O. JD3 ignored Plaintiff. *Id*. at ¶ 49. In the afternoon hours of July 8, 2013, Plaintiff informed C.O. John Doe 4 ("JD4") that he had "extreme pain in his left knee when he put pressure on his left leg and when walking and needed immediate medical attention." *Id*. at ¶ 50. C.O. JD4 told Plaintiff that medical personnel had left and he would have to speak to the morning tour corrections officer. *Id*. at ¶ 51.

In the morning hours of July 9, 2013, Plaintiff told C.O. JD3 that he still had "extreme pain in his left knee when he put pressure on his left leg and when walking and needed immediate medical attention." *Id*. at ¶ 52. C.O. JD3 ignored Plaintiff's request for medical attention. *Id*. at ¶¶ 53-53. Thereafter, Plaintiff telephoned his mother and "informed her about what happened on July 7, 2013 to present." *Id*. at ¶ 54. Plaintiff's mother telephoned WCF and Albany, notifying "them" that Plaintiff needed medical attention. *Id*. at ¶ 55.

During the afternoon hours of July 9, 2013, C.O. John Doe 5 ("JD5") escorted Plaintiff to WCF's Medical Health Services. *Id*. at ¶ 56. Plaintiff was examined by Nurse Jane Doe 6 ("JD6") and Nurse Aide Edie R. *Id*. Plaintiff told Nurse JD6 and Nurse Aide Edie R. that he was "unable to walk without extreme pain." *Id*. at ¶ 57. Nurse JD6 and Nurse Aide Edie R. told Plaintiff that he "may have torn his [anterior cruciate ligament ("ACL")] in his left knee." *Id*. at ¶ 58. Nurse JD6 and Nurse Adie Edie R. provided Plaintiff with a knee sleeve, crutches, and ibuprofen. *Id*. at ¶ 59. Plaintiff was escorted back to his dormitory. *Id*.

### C. July 10, 2013

On July 10, 2013, Plaintiff's mother telephoned WCF and Albany, notifying "them" that Plaintiff was still in extreme pain and required medical attention. *Id*. at ¶ 60. C.O. JD6 transported Plaintiff to WCF's Medical Health Services to be seen by an "outside doctor." *Id*. at

¶ 61.  Plaintiff was examined by Doctor John Doe 7.  *Id*. at ¶ 62.  Plaintiff was given Percocet and an immobilizer for his left knee.  *Id*. at ¶ 63.  Plaintiff was told that "it appeared that he tore ligaments in his left knee and needed medical treatment at an outside hospital."  *Id*. at ¶ 62.

Two hours later, Plaintiff was transferred to Fishkill Correctional Facility ("FCF") "without any of his personal property, such as his legal work, religious materials, clothing, and hygiene products."  *Id*. at ¶ 64.  At FCF, Plaintiff "was placed in Keep Lock where he was unable to commentate with anyone outside."  *Id*. at ¶ 65.

### D.    July 11, 2013,

On July 11, 2013, Plaintiff informed C.O. John Doe 8 ("JD8") that he still had "extreme pain in his left knee when he put pressure on his left leg and when walking and needed immediate medical attention."  *Id*. at ¶ 66.  Plaintiff also requested underwear, hygiene products, and religious materials.  *Id*. at ¶ 67.  C.O. JD8 told Plaintiff that he would "look into getting Plaintiff's property."  *Id*. at ¶ 67.  Doctor John Doe 9 examined Plaintiff and told him that he needed a magnetic resonance imaging ("MRI") scan for his left knee.  *Id*. at ¶ 68.

### E.    July 12, 2013, through July 15, 2013

Every morning and afternoon from July 12, 2015, to July 15, 2013, Plaintiff informed C.O. JD8 that he "still had extreme pain in his left knee when he put pressure on his left leg and when walking and needed immediate medical attention."  *Id*. at ¶ 69.  He also requested underwear, hygiene products, and religions materials.  *Id*. at ¶ 70.  Plaintiff was never provided with his underwear, hygiene products or religious materials.  *Id*. at ¶ 71.

On July 15, 2013, Plaintiff was "transferred to an outside hospital where he was examined by Doctor FNU Middleton and was given a date for an MRI."  *Id*. at ¶ 72.

**F.      July 16, 2013, through August 2, 2013**

On July 16, 2013, Plaintiff requested to speak to a sergeant because he "had been in Keep Lock for eight (8) days on a Tier II ticket and still had not had a hearing." *Id*. at ¶ 73. Plaintiff was removed from Keep Lock and placed in General Population. *Id*. at ¶ 74.

Based on the above, Plaintiff claims that from July 7, 2013, to the date of the operative complaint, he did not receive "adequate medical care, attention and treatment for his condition which causes and continue to cause Plaintiff serious pain and discomfort, specifically in his left knee, and he has difficulty walking." *Id*. at ¶ 81. From July 10, 2013 to August 2, 2013, Plaintiff was deprived of his personal belongings and subjected to illegal detainment in isolation for twenty-eight (28) days." *Id*. at ¶ 82.

## III.      LEGAL STANDARD

A defendant may move to dismiss a complaint on the ground that the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the

pleader is entitled to relief." *Id*. at 679 (internal citation and punctuation omitted). As the

Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of

specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from

conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007)

(quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the

material facts alleged in the complaint as true and construe all reasonable inferences in the

plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).

However, "the tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing

*Twombly*, 550 U.S. at 555).

## IV.    DISCUSSION

C.O. Norton and C.O. Lester move pursuant to Rule 12(b)(6) to dismiss the following

claims: (1) Eighth Amendment failure to intervene and protect Plaintiff from inmate Sanders'

assault; (2) verbal harassment and threats; and (3) Eighth Amendment deliberate indifference to

Plaintiff's medical needs. (Dkt. No. 32-1 at 3-4.[4]) Plaintiff has filed an opposition. (Dkt. No.

40.)

---

[4] C.O. Norton and C.O. Lester are not moving to dismiss the excessive force and failure to
intervene claim against them regarding their alleged assault of Plaintiff and the failure to protect
Plaintiff from that assault. (Dkt. No. 31-1 at 3 n.1.)

### A.	Failure to Intervene and Protect Plaintiff from Inmate Sanders's Assault

The Eighth Amendment to the United States Constitution, which prohibits cruel and unusual punishment, "tasks prison officials with taking reasonable measures to guaranty the safety of inmates; included within this duty is the obligation to protect prisoners from harm caused by fellow inmates." *Murray v. Goord*, 668 F. Supp. 2d 344, 357 (N.D.N.Y. 2009) (Scullin, J.) (citing, *inter alia*, *Farmer v. Brennan*, 511 U.S. 825, 837 (1970)).  A corrections officer who is present while an assault upon an inmate occurs may bear responsibility for any resulting constitutional deprivation, even if he did not directly participate.  *See, e.g.*, *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 342 (N.D.N.Y. 2010); *Cicio v. Graham*, No. 9:08-CV-534 (NAM/DEP), 2010 WL 980272, at *13 (N.D.N.Y. Mar. 15, 2010).

"To establish liability on the part of a defendant for failure to protect or intervene, 'the plaintiff must adduce evidence establishing that the officer had (1) a realistic opportunity to intervene and prevent the harm, (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated, and (3) that officer does not take reasonable steps to intervene.'"  *Benitez v. Parmer*, No. 9:12-CV-0448 (GTS/DEP), 2013 WL 5310245, at *7 (N.D.N.Y. July 8, 2013) (quoting *Henry v. Dinelle*, No. 9:10-CV-0456 (GTS/DEP), 2011 WL 5975027, at *4 (N.D.N.Y. Nov. 29, 2011)).  Thus, mere inattention or inadvertence does not rise to a level of deliberate indifference sufficient to support liability for failure to intervene.  *Cicio v. Lamora*, No. 9:08-CV-431 (GLS/DEP), 2010 WL 1063875, at *8 (N.D.N.Y. Feb. 24, 2010) (citations omitted).  Indeed, officers generally "cannot be held liable for failure to intervene in incidents that happen in a 'matter of seconds.'"  *Henry*, 2011 WL 5975027, at *4 (quoting *Parker v. Fogg*, No. 85-CV-177 (NPM), 1994 WL 49696, at *8

(N.D.N.Y. Feb. 17, 1994)).

Moreover, a failure to protect claim requires a showing that a prison official acted with "deliberate indifference" to the inmate's safety. *Morales v. N.Y. State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988). As such, the inmate "must establish both that a substantial risk to his safety actually existed and that the offending [defendant] knew of and consciously disregarded that risk." *Farmer*, 511 U.S. at 837.

Defendants argue that Plaintiff's failure to intervene claim must be dismissed because Plaintiff fails to allege facts that plausibly suggest C.O. Norton and C.O. Lester had a realistic opportunity to intervene or to prevent inmate Sanders' assault. (Dkt. No. 32-1 at 6-7.) The Court agrees.[5]

As set forth above, Plaintiff claims that while he was playing basketball on July 7, 2013, inmate Sanders hit Plaintiff in the back of his head twice, and then grabbed Plaintiff into a bear hug. (Dkt. No. 23 at ¶¶ 25-28.) C.O. JD1 approached these inmates and ordered them to stop fighting. *Id*. at ¶ 28. Inmate Sanders released Plaintiff from the bear hug. *Id*. at ¶ 32. Even liberally construed, Plaintiff has not alleged that C.O. Norton or C.O. Lester were present during the inmate-on-inmate attack. Plaintiff has not pleaded that the assault lasted for any duration of time that would have allowed C.O. Norton or C.O. Lester, assuming they were present, to intervene. By his own account, Plaintiff states that C.O. Norton and C.O. Lester "approached" Plaintiff and inmate Sanders *after* inmate Sanders released Plaintiff from the bear hug. *See id*. at

---

[5] Plaintiff has not addressed this claim in his opposition brief. (*See* Dkt. No. 40.) Instead, Plaintiff argues that he has sufficiently pleaded that either C.O. Norton or C.O. Lester failed to intervene in the other's use of excessive force. *Id*. at 7-8. However, as set forth above, Defendants have not moved to dismiss the excessive force/failure to intervene claim against them. (Dkt. No. 32-1 at 3 n.1.)

¶¶ 31-32.  According to Plaintiff, C.O. JD1 responded to Inmate Sanders' assault, ordered Plaintiff and inmate Sanders to stop fighting, and Plaintiff was released from the bear hug.  *Id.* at ¶¶ 28-32.  Plaintiff has not alleged that C.O. JD1's prompt response to the inmate-on-inmate attack was somehow deficient.

Accordingly, Plaintiff has not alleged facts that plausibly suggest that C.O. Norton and C.O. Lester had a realistic opportunity to intervene and protect Plaintiff from inmate Sanders' conduct.

Nor has Plaintiff alleged facts to plausibly suggest that C.O. Norton and C.O. Lester knew of and disregarded a substantial risk to Plaintiff's safety.  Plaintiff's conclusory and speculative allegation that C.O. Norton and C.O. Lester "created and maintained an unsafe and dangerous environment for [Plaintiff] by failing to supervise the inmate and to permit inmate on inmate assaults" fails to state an Eighth Amendment claim.  (*See* Dkt. No. 23 at ¶ 83(b).)

For the reasons set forth above, the Court recommends dismissing the failure to protect and intervene claim against C.O. Norton and C.O. Lester regarding inmate Sanders' assault pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. However, because some of the problems discussed above may be attributed to pleading error, the Court recommends dismissing this claim without prejudice.[6]

### B.  Verbal Harassment and Threats

Verbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under § 1983.  *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986)

---

[6]  This by no means suggests that this claim is meritorious, as there are many facts and circumstances that may pose obstacles to success on the merits.

(per curiam); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("verbal

harassment or profanity alone, unaccompanied by any injury no matter how inappropriate,

unprofessional, or reprehensible it might seem, does not constitute the violation of any federally

protected right and therefore is not actionable under 42 U.S.C. § 1983") (quotation omitted); *see

also Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (collecting cases); *Rosales v.

Kikendall*, 677 F. Supp. 2d 643, 648 (W.D.N.Y. 2010) ("In this Circuit, allegations of verbal

harassment or threats are generally an insufficient basis for an inmate's § 1983 claim."); *see also

Gill v. Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003) ("42 U.S.C. § 1983 is not designed

to rectify harassment or verbal abuse.") (citation omitted).

Accordingly, the Court recommends dismissing this claim with prejudice pursuant to

Rule 12(b)(6) for failure to state a claim upon which relief may be granted because the problem

with Plaintiff's claim is substantive and cannot be cured by a better pleading. *See Cuoco v.

Moritsugu*, 222 F. 3d 99, 112 (2d Cir. 2000).

## C.    Medical Indifference to Serious Needs

An inmate's claim that he was denied medical care is also analyzed under the Eighth

Amendment's prohibition of cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97,

101-03 (1976).  "[D]eliberate indifference to serious medical needs of prisoners constitutes the

unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Id*. at 104

(citation and internal quotation marks omitted).  As with other Eighth Amendment cruel and

unusual punishment claims, an inmate must satisfy a standard that includes both objective and

subjective components. *See Taylor v. Goorde*, 548 F. App'x 696, 697-98 (2d Cir. 2013).

The objective component examines whether the inmate was actually deprived of adequate

medical care and whether the denial was "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d

263, 280 (2d Cir. 2006).  The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire.  Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.'" *Jones v. Westchester Cnty. Dep't of Corrections Med. Dept.*, 557 F. Supp. 2d 408, 413 (S.D.N.Y. 2008) (quoting *Salahuddin*, 467 F.3d at 280).

Where there is a complete failure to provide treatment, the court must look to the seriousness of the inmate's medical condition.  *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003).  Where the challenge is to the adequacy of the treatment provided, such as in cases where treatment is alleged to have been delayed or interrupted, the seriousness inquiry focuses on "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition considered in the abstract."  *Id*. at 186.

Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, such a classification is reserved "for cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a life-threatening and fast degenerating condition for three days; or delayed major surgery for over two years."  *Freeman v. Stack*, No. 99 Civ. 9878(AJP), 2000 WL 1459782, at *6 (S.D.N.Y. Sept. 29, 2000); *see, e.g.*, *DeBlasio v. Rock*, No. 9:09-CV-1077 (TJM/GHL), 2011 WL 4478515, at *11 N.D.N.Y. Sept. 26, 2011) ("A two-hour wait for medical care is not the type of delay that indicates deliberate indifference.").  In addition, "[w]here a plaintiff's claim is based on a delay in medical treatment, the plaintiff must show that 'substantial harm' resulted from the delay itself."  *Williams v.*

*Raimo*, No. 9:10-CV-0245 (MAD/GHL), 2011 WL 6026115, (N.D.N.Y. July 22, 2011) (citations omitted), *adopted by* 2011 WL 6026111 (N.D.N.Y. Dec. 2, 2011).

The subjective component concerns the defendant's mental state, and requires that the defendant acted "with deliberate indifference to inmate health" – "a mental state equivalent to subjective recklessness [as the term is used in criminal law]." *Salahuddin*, 467 F.3d at 280.

1.     Serous Medical Condition

A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) (citations omitted), *accord Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance*, 143 F.3d at 702-03.

2.     Deliberate Indifference

"Deliberate indifference means that a prison official was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and drew that inference." *Baumann v. Walsh*, 36 F. Supp. 2d 508, 512 (N.D.N.Y. 1999) (Scullin, J.) (citing *Farmer*, 511 U.S. at 837); *see also Hathaway*, 37 F.3d at 66 ("Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm."). The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. at 835. "Deliberate indifference may be

manifested by a prison doctor's response to an inmate's needs. It may also be shown by a corrections officer denying or delaying an inmate's access to medical care or by intentionally interfering with an inmate's treatment." *Delisser v. Goord*, No. 9:02-CV-0073 (FJS/GLS), 2003 WL 133271, at *5 (N.D.N.Y. Jan. 15, 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)); *see also Baumann*, 36 F. Supp. 2d at 512 ("Non-medical prison personnel engage in deliberate indifference where they intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to the attendant prison personnel.") (internal quotation marks and citations omitted).

 3. Analysis

 In this case, Plaintiff states that after the alleged July 7, 2013, use of force, C.O. Norton and C.O. Lester transported Plaintiff to WCF's Medical Facility where he was examined by a nurse. (Dkt. No. 23 at ¶¶ 39-40, 44, 46.) On July 9, 2013, two days after the incident, Plaintiff was examined by a nurse and provided with a knee sleeve, crutches and ibuprofen. *Id*. at ¶¶ 56, 59. On July 10, 2013, three days after the incident, Plaintiff was examined by a doctor and given Percocet and an immobilizer. *Id*. at 6¶¶ 1, 63. On July 11, 2013, four days after the incident, Plaintiff was examined by a doctor and notified that he needed a MRI. *Id*. at ¶¶ 64-65, 68. On July 15, 2013, eight days after the incident, Plaintiff was sent to a hospital, examined by a doctor, and provided with a date for an MRI. *Id*. at ¶ 72.

 While acknowledging the above-medical treatment, Plaintiff nonetheless contends that that C.O. Norton and C.O. Lester, along with other DOCCS employees "exercised deliberate indifference to Plaintiff's health by failing to provide Plaintiff with immediate and adequate medical care or to allow Plaintiff to visit the infirmary to obtain medical care for his injuries after

being notified by Plaintiff of his severe and painful injuries, specifically his left knee, on July 7, 2013, which allowed his injuries to worsen." (Dkt. No. 23 at ¶ 105.) Inasmuch as Plaintiff has pleaded that C.O. Norton and C.O. Lester transported Plaintiff to WCF's Medical Facility immediately after the July 7, 2013, incident where he was examined by a nurse, the Court finds that Plaintiff's second amended complaint does not make a plausible showing that C.O. Norton and C.O. Lester denied, delayed, or interfered with Plaintiff's medical care. In fact, Plaintiff's allegations more plausibly show that C.O. Norton and C.O. Lester were responsive to Plaintiff's medical needs and not deliberately indifferent to it. (Dkt. No. 32-1 at 11; Dkt. No. 23 at ¶¶ 39-40, 44, 46.[7])

In his opposition to Defendants' motion, Plaintiff argues that "C.O. Norton and C.O. Lester deliberately interfered, denied and delayed with his access to medical treatment by placing Plaintiff in Keep Lock, which is isolation, and denied him access to the telephone and mail." (Dkt. No. 40 at 10.) The Court finds this argument without merit.

Even if the Court assumes that Plaintiff's injuries were sufficiently serious to satisfy the objective element of his claim, Plaintiff has failed to make a facially plausible showing of deliberate indifference.[8] *See Chance*, 143 F.3d at 703 ("medical mistreatment rises to the level

---

[7] Because C.O. Norton and C.O. Lester have not moved to dismiss the Eighth Amendment excessive force and failure to intervene claim, the Court expresses no opinion in the manner in which Defendants transported Plaintiff to WCF's medical facility on July 7, 2013.

[8] There is some doubt as to whether Plaintiff's torn ACL is a sufficiently serious medical condition. *See, e.g.*, *Guarneri v. Hazzard*, No. 9:06-CV-0985 (NAM), 2008 WL 552872, at * 5 (N.D.N.Y. Feb. 27, 2008) ("Generally, knee injuries have been held insufficient to trigger Eighth Amendment protection.") (collecting cases); *see also Santiago v. Coniglio*, No. 07-CV-0791 (JJM), 2009 WL 3672062, at *3 (W.D.N.Y. Oct. 29, 2009) (holding that torn ACL and periodic complaints of knee pain over a one-year period did not satisfy the objective prong of the Eighth Amendment standard). However, because Plaintiff has alleged "extreme pain," limitations of

of deliberate indifference only when it involves culpable recklessness, *i.e.*, an act or a failure to act . . . that evinces a conscious disregard of a substantial risk of serious harm.) (citation and internal quotation marks omitted).  As discussed above, Plaintiff has not made a plausible showing that C.O. Norton and C.O. Lester, non-medical professionals, denied or delayed his access to medical care or intentionally interfered with the treatment once prescribed.  *See Estelle*, 429 U.S. at 104.  Nor has Plaintiff alleged that any delay in medical care caused "substantial harm."  *See Williams v. Raimo*, No. 9:10-cv-245 (MAD/GHL), 2011 WL 6026111, at *5 (N.D.N.Y. Dec. 2, 2011) (dismissing deliberate indifference claim were inmate was not substantially harmed by not seeing medical personnel on the day after the incident).

To the extent Plaintiff claims that C.O. Norton and C.O. Lester failed to provide "immediate" medical care by taking "too long" to transport Plaintiff to WCF's Medical Services, the Court finds this argument without merit.  *See, e.g.*, *Herbert v. N.Y. City Dep't of Corr.*, No. 10 CV 8799 (BSJ)(RLE), 2012 WL 3834660, at *4 (S.D.N.Y. Aug. 20, 2012) (dismissing medical indifference claim even though defendant delayed access to medical treatment by eight hours because plaintiff received medical treatment on the same day).  Further, Nurse JD2 examined Plaintiff, provided him with band-aids, and sent him back to his housing unit.  (Dkt. No. 23 at ¶¶ 44-46.)  C.O. Norton and C.O. Lester, non-medical professionals, were entitled to rely on the opinion of medical staff.  *See Rosario*, 2015 WL 5692550, at *12 (corrections officials are entitled to rely on the opinions of medical staff concerning the proper course of

---

daily activities, and was seen by DOCCS medical staff and sent to an outside hospital for a MRI, the Court will assume for purposes of this motion only that Plaintiff has satisfied the objective element of this claim.  *See Chance*, 143 F.3d at 702-03.

treatment) (citing *Abdush-Shahid v. Coughlin*, 933 F. Supp. 168, 183 (N.D.N.Y. 1996) (collecting cases)).

Lastly, the law is clear that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). Nowhere has Plaintiff alleged that C.O. Norton and C.O. Lester were involved in Plaintiff's medical care, or lack thereof, in any way whatsoever after July 7, 2013.

Accordingly, for the reasons set forth above, the Court recommends dismissing this claim pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Because some of the problems discussed above may be attributed to pleading error, the Court recommends dismissal without prejudice.[9]

Based upon the foregoing, it is recommended that Defendants' Rule 12(b)(6) partial motion to dismiss Plaintiff's second amended complaint (Dkt. No. 32) be granted in its entirety.

## V.     PLAINTIFF'S FRIVOLOUS CLAIMS

A district court "has the authority to dismiss *sua sponte* a complaint, or portion thereof, for which a plaintiff has paid the filing fee where the plaintiff presents no arguably meritorious issue." *Gianello v. Port Authority of N.Y. and N.J.*, No. 11 Civ. 3829(JGK), 2011 WL 2436674, at *1 (S.D.N.Y. June 16, 2011); *see Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (a district court may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee). "An action is frivolous if it lacks an arguable basis in law and fact—*i.e.*, where it is 'based on an indisputably meritless legal theory' or

---

[9]   Again, this by no means suggests that this claim is meritorious, as there are many facts and circumstances that may pose obstacles to success on the merits.

presents 'factual contentions [which] are clearly baseless.'" *Scanlon v. Vermont*, 423 F. App'x 78, 79 (2d Cir. 2011) (summary order) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989), *abrogated on other grounds by Twombly*, 550 U.S. 544). Accordingly, it is also recommended that the District Court *sua sponte* dismiss the following claims.

### A.     Official Capacity Claims

Plaintiff has sued all of the Defendants for money damages under § 1983 in both their individual and official capacities. (Dkt. No. 23 at ¶ 13.) However, the Eleventh Amendment protects states against suits brought in federal court. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). The immunity granted the states under the Eleventh Amendment extends beyond the states themselves to state agents and instrumentalities that are effectively arms of the state. *Woods v. Rondout Valley Cent. School Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006). The Eleventh Amendment bars all money damages claims against state officials acting in their official capacities, including the DOCCS Defendants herein. *Kentucky v. Graham*, 473 U.S. 159, 167-68 (1985); *see also Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (an inmate's claims for damages against individual DOCCS employees sued in their official capacities are considered claims against New York and are thus barred by the State's Eleventh Amendment immunity).

Therefore, it is recommended that the District Court *sua sponte* dismiss Plaintiff's §1983 claims against all Defendants in their official capacities with prejudice as barred by the Eleventh Amendment. *See Woods*, 466 F.3d at 238 (recognizing that courts may raise the issue of Eleventh Amendment immunity *sua sponte*); *Johnson v. Enu*, No. 08-CV-158 (FJS/DRH), 2011 WL 3439179, at *7 (N.D.N.Y. July 13, 2011) (recommending *sua sponte* dismissal of official capacity claims for money damages), *adopted by* 2011 WL 3439524 (Aug. 5, 2011).

**B.	Fourth, Fifth, and Sixth Amendments Claims**

Plaintiff brings this action "under" the Fourth, Fifth, and Sixth Amendments, none of which are implicated in this action.  (Dkt. No. 23 at ¶ 1.)  The Fourth Amendment, applicable to the State by way of the Fourteenth Amendment, protects the "right to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV. "While this fundamental protection is not completely lost by prisoners merely as a consequence of their incarceration, prisoners nevertheless do not enjoy the same privacy rights as non-prisoners since 'loss of . . . privacy is an inherent incident of confinement.'"  *Brickey v. Superintendent, Franklin Corr. Facility*, No. 9:10-CV-085 (FJS/RFT), 2011 WL 868148, at *6 (N.D.N.Y. Feb. 17, 2011) (brackets omitted) (quoting *Bell v. Wolfish*, 441 U.S. 520, 537 (1979). Under the facts as pleaded, Plaintiff has failed to allege a Fourth Amendment claim.

The Due Process Clause of the Fifth Amendment applies only to the federal government, and not to state or municipal governments.  *Mitchell v. Home*, 377 F. Supp. 2d 361, 372-73 (S.D.N.Y. 2005) ("The Fifth Amendment's Due Process Clause protects citizens against only federal government actors, not State officials.  Any due process rights plaintiff enjoys as against state government officials . . . arise solely from the Fourteenth Amendment due process clause." (internal citations omitted)); *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without due process of law.").

Further, the Sixth Amendment, on its face, is only applicable to criminal prosecutions. U.S. Const. amend. VI. ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . .").

Therefore, it is recommended that Plaintiff's Fourth, Fifth, and Sixth Amendment claims be *sua sponte* dismissed without prejudice for failure to state a claim upon which relief may be granted.

## C.    Conspiracy Claims

In order to state a conspiracy claim under § 1983, a plaintiff must allege facts plausibly showing (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff, and (2) an overt act was committed in furtherance of that goal. *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002). Moreover, a § 1983 conspiracy claim must not only allege a conspiracy, but the "actual deprivation of constitutional rights." *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363-64 (S.D.N.Y. 2000) (citation omitted).

Plaintiff's second amended complaint also references 42 U.S.C. § 1985. (Dkt. No. 23 at ¶ 1.[10]) To state a claim under § 1985(3), a plaintiff must allege:

> (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right of the citizens of the United States.

*Vega v. Artus*, 610 F. Supp. 2d 185, 204 (Mar. 26, 2009) (internal quotation marks and citations omitted). In addition, the conspiracy under § 1985 must be motivated by racial animus. *See Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000).

---

[10]  The first two subsections of 42 U.S.C. § 1985 are clearly not relevant to this action. The first subsection prohibits conspiracies to prevent "any officer of the United States" from carrying out his or her duties. 42 U.S.C. § 1985(1). The second subsection prohibits conspiracies to "deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein." *Id*. § 1985(2).

A plaintiff's conspiracy allegation "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *Ciambriello*, 292 F.3d at 325.

In this case, Plaintiff has not plead one single fact plausibly showing the existence of a conspiracy. Plaintiff merely states that Defendants, "jointly and severely . . . covered-up the actions of each other in the use of excessive force and failure to provide medical treatment." (Dkt. No. 23 at ¶ 83(c).) Moreover, Plaintiff does not allege any race or class based animus as required to support a § 1985 conspiracy claim.

Simply stated, the Court has reviewed the second amended complaint and finds that it does not contain any factual allegations to support a plausible conspiracy claim under §§ 1983 and 1985 involving any of the Defendants. "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be 'enough to raise a right to relief above the speculative level.'" *Flores v. Levy*, No. 07-CV-3753 (JFB/WDW), 2008 WL 4394681, at *9 (E.D.N.Y. Sep. 23, 2008) (citing *Twombly*, 550 U.S. at 555).

In any event, in all likelihood Plaintiff's conspiracy claims would likely be barred by the "intra-agency conspiracy" doctrine. *See Griffin-Nolan v. Providence Washington Ins. Co.*, No. 5:04-CV-1453 (FJS/GJD), 2005 WL 1460424, at *10-11 (N.D.N.Y. June 20, 2005); *see also Little v. City of New York*, 487 F. Supp. 2d 426, 441-42 (S.D.N.Y. 2007) (citations omitted). Generally, this doctrine provides that officers, agents or employees of a single corporate entity are legally incapable of conspiring together. *Everson v. New York City Transit Auth.*, 216 F. Supp. 2d 71, 76 (E.D.N.Y. 2002) (citation omitted).

Therefore, it is recommended that the District Court *sua sponte* dismiss without prejudice Plaintiff's conspiracy claims under §§ 1983 and 1985 for failure to state a claim upon which relief may be granted.

**D.      42 U.S.C. §1981**

Plaintiff's second amended complaint also references 42 U.S.C. § 1981.  (Dkt. No. 23 at ¶ 1).  Section 1981 provides that all persons "shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind."  42 U.S.C. § 1981(a).  To state a claim under § 1981, a plaintiff must allege that "(1) [he] is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (*i.e.*, make and enforce contracts, sue and be sued, give evidence, etc.)."  *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993).

As noted above, Plaintiff does not allege that he is a member of a racial minority or that he was subjected to discrimination because of his race in connection with any of the activities enumerated in § 1981.  Therefore, it is recommended that the District Court *sua sponte* dismiss without prejudice Plaintiff's claims under § 1981 for failure to state a claim upon which relief may be granted.

**E.      18 U.S.C. § 242**

Plaintiff's complaint also references 18 U.S.C. § 242, which is a provision of the criminal code.  (Dkt. No. 23 at ¶ 1.)  However, it is well-settled that there exists no private right of action

to enforce criminal statutes, which, as a general matter, are prosecuted by the government and not by private individuals. *See Hill v. Didio*, 191 F. App'x 13, 14 (2d Cir. 2006) (no private right of action under 18 U.S.C. § 242) (citations omitted); *see also Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009). Therefore, it is recommended that the District Court *sua sponte* dismiss with prejudice Plaintiff's claims brought under 18 U.S.C. § 242 for failure to state a claim upon which relief may be granted.

### F.       Assault and Battery

Courts have an obligation to address issues of jurisdiction *sua sponte*. *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006). Plaintiff's claims for assault and battery against all Defendants are barred "because New York Correction Law § 24 shields them from liability for state law claims in both state and federal court." *Cruz v. New York*, 24 F. Supp. 3d 299, (W.D.N.Y. 2014). In relevant part, New York Correction Law § 24 states:

> No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

N.Y. Correct. Law § 24 (McKinney 2017). An employee's actions are deemed to be within the scope of their employment when "the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions." *Ierardi v. Sisco*, 119 F.3d 183, 187 (2d Cir. 1997) (citations omitted). "Consistent with this precept, various courts have held that a correctional officer who uses force while on duty is acting within the scope of employment, and therefore is entitled to the protections of [New York Correction Law] section

24." *Deal v. Yurack*, No. 9:04-CV-0072 (LEF/DEP), 2007 WL 2789615, at *10 (N.D.N.Y. Sept. 24, 2007) (collecting cases).

Here, Plaintiff claims that "at all times herein mentioned," Defendants were employed by the State and DOCCS, were acting as agents, servants, and employees of the State and DOCCS, and were and acting "under color of state law and under their authority as" corrections officers, nurses, and nurse's aides. (Dkt. No. 23 at ¶¶ 7-19.) Accordingly, it is recommended that the District Court *sua sponte* dismiss with prejudice Plaintiff's assault and battery claims against all Defendants for lack of subject matter jurisdiction.

## VII. CONCLUSION

Based upon the foregoing, if the District Court adopts this Report and Recommendation, as to C.O. Norton and C.O. Lester, only Plaintiff's Eighth Amendment excessive force and failure to intervene claim remains. (*See* Dkt. No. 31-1 at 3 n.1.)

**ACCORDINLGY**, it is hereby

**RECOMMENDED** that Defendants' Rule 12(b)(6) partial motion to dismiss the second amended complaint (Dkt. No. 32) be **GRANTED**, and it is further

**RECOMMENDED** that the failure to intervene and to protect Plaintiff from inmate Sanders' assault and claim for deliberate indifference to Plaintiff's medical needs against C.O. Norton and C.O. Lester be dismissed without prejudice, and that Plaintiff's claim for verbal harassment and threats be dismissed with prejudice; and it is further

**RECOMMENDED** that the following be *sua sponte* **DISMISSED** against all Defendants with prejudice: (1) § 1983 official capacity claims; (2) assault and battery claims; (3) claims under the Fifth and Sixth Amendments; and (4) claims under 18 U.S.C. § 241; and it is

further

**RECOMMENDED** that the following be *sua sponte* **DISMISSED** against all

Defendants without prejudice: (1) claims under the Fourth Amendment; (2) conspiracy claims

under §§ 1983 and 1985, and (3) claims under § 1981.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the

Court.  <u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**</u>

<u>**PRECLUDE APPELLATE REVIEW**</u>.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72.


Dated:  August 4, 2017
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge